No. 22-1721

IN THE

# United States Court of Appeals
# for the Fourth Circuit

_____

**MAXWELL KADEL; JASON FLECK; CONNOR THONEN-FLECK; JULIA MCKEOWN; MICHAEL D. BUNTING, JR.; C.B., by his next friends and parents; SAM SILVAINE; and DANA CARAWAY,**

*Plaintiffs-Appellees,*

v.

**DALE FOLWELL, in his official capacity as State Treasurer of North Carolina; and DEE JONES, in her official capacity as Executive Administrator of the North Carolina State Health Plan for Teachers and State Employees,**

*Defendants-Appellants,*

**and**

**NORTH CAROLINA STATE HEALTH PLAN FOR TEACHERS AND STATE EMPLOYEES; and STATE OF NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY,**

*Defendants.*

_____

On Appeal from the U.S. District Court for the
Middle District of North Carolina
No. 1:19-cv-00272-LCB-LPA

_____

**RESPONSE TO DEFENDANTS DALE FOLWELL AND DEE JONES'
MOTION FOR STAY OF INJUNCTION PENDING APPEAL**

_____

*Counsel for Plaintiffs-Appellees listed on following page.*

Amy E. Richardson
Lauren E. Snyder
HWG LLP
1919 M Street, NW, 8th Floor
Washington, DC 20036
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601
(202) 730-1300

Michael W. Weaver
MCDERMOTT WILL & EMERY
444 W. Lake St., Suite 4000
Chicago, IL 60606
(312) 984-5820

Dmitriy G. Tishyevich
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue
New York, NY 10017-3852
(212) 547-5534

Tara L. Borelli
Carl S. Charles
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1 West Court Square, Ste. 105
Decatur, GA 30030
(404) 897-1880

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585

David P. Brown
Ezra Cukor
TRANSGENDER LEGAL DEFENSE &
EDUCATION FUND, INC.
520 8th Avenue, Ste. 2204
New York, NY 10018
(646) 862-9396

Counsel for Plaintiffs-Appellees

Defendants Dale Folwell and Dee Jones (in their official capacities) seek the extraordinary relief of staying the district court's permanent injunction which barred enforcement of a discriminatory health plan exclusion and required the reinstatement of coverage for "medically necessary services of treatment for gender dysphoria." As set forth below, they have failed to carry their heavy burden, a burden now substantially greater as their request for a stay was denied by the district court.[1] *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) ("Ordinarily, when a party seeking a stay makes application to an appellate judge following the denial of a similar motion by a trial judge, the burden of persuasion on the moving party is substantially greater than it was before the trial judge.").

## I.   LEGAL STANDARD

Federal Rule of Civil Procedure 62(d) allows a court to suspend or modify an injunction "[w]hen an appeal is pending from an interlocutory order or final judgment that grants . . . an injunction." *See also* Fed. R. App. P. 8(a). The granting of a stay pending appeal is "an extraordinary remedy," *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, No. 1:04-CV-977, 2007 WL 4262725, at *4 (M.D.N.C. Nov. 30, 2007), and the moving party carries a "heavy burden" to justify

---

[1] On July 27, 2022, forty-seven days after the injunction issued, Defendants filed a motion to stay in the district court. Prior to the district court ruling on their motion, Defendants filed a motion to stay in this Court. A day after Defendants' filing, on October 19, 2022, the district court denied Defendants' motion. ECF 268.

this type of equitable relief.  *Covington v. North Carolina*, No. 1:15-CV-399, 2018 WL 604732, at *3 (M.D.N.C. Jan. 26, 2018).

When considering the merits of a motion to stay, a court will consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). These factors were adopted by this Circuit in *Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970).

In the first forty years after *Long*, district courts regularly applied the *Long* factors using a balancing test or sliding scale to evaluate a motion to stay.  This changed following this Court's decision in *The Real Truth About Obama, Inc. v. FEC*, which modified the analysis for granting a preliminary injunction.  575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reissued in relevant part*, 607 F.3d 355 (4th Cir. 2010).  This Court recognized that the U.S. Supreme Court in *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008), ended the balancing test for preliminary injunctions, and now requires the movant to satisfy all four requirements.  *The Real Truth,* 575 F.3d at 346-47.  This Court held that the moving party must make a "clear showing" on all four requirements

4

before the court may order injunctive relief. *Id.*; *see also CWCapital Asset Mgmt., LLC v. Burcam Cap. II, LLC*, No. 5:13-CV-278-F, 2013 WL 3288092, at \*2 (E.D.N.C. June 28, 2013) ("Now, the moving party must independently satisfy all four requirements for a preliminary injunction, and the district court should not balance the four factors.").

Given the intertwined nature of the standards to grant a preliminary injunction and a stay pending an appeal,[2] some district courts still apply the *Long* factors "on a sliding-scale and allow a stronger showing on some factors to make up for a weaker showing on others,"[3] but many have analyzed the issue and adopted the "more rigid" standard set in *The Real Truth* when considering motions to stay. *Rose v. Logan*,

_____

[2] *Syngenta Crop Prot., Inc. v. EPA*, 202 F. Supp. 2d 437, 448 (M.D.N.C. 2002) ("The test for granting a stay mirrors that in determining whether to issue a preliminary injunction."); *see also Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193 (4th Cir. 1977) (The four part test established in *Blackwelder* to grant preliminary injunctions evolved from the same "fourfold equitable rule of thumb" as the one laid out in *Long* for granting a stay pending appeal).

[3] Defendants cite to *Ohio Valley Env't Coal., Inc. v. U.S. Army Corps of Engineers*, 890 F. Supp. 2d 688, 692 (S.D.W. Va. 2012) and *Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 519 (W.D.N.C. 1999) to support their position that they "need not affirmatively satisfy all four requirements" under the *Long* test. Br. at 4-5. However, *Arkansas Best* predates *The Real Truth* by a decade and therefore does not shed any light on the topic. While *Ohio Valley* does state that "an independent showing on each prong[] does not apply directly to stays pending appeal," the district court seems to contradict itself by stating later in the opinion that movants "do satisfy each of the three other prongs in this case. *Because all four factors must be met*, however, [movants'] failure to meet the first prong is sufficient grounds for concluding that a stay pending appeal should not be granted to [movants]." 890 F. Supp. 2d at 692-93 (emphasis added).

No. BR 12-25471, 2014 WL 3616380, at *1–2 (D. Md. July 21, 2014); *see In re Kaiser Gypsum Co., Inc*., No. 3:20-CV-537-GCM, 2021 WL 3476138, at *1 (W.D.N.C. Aug. 6, 2021) ("Failure to satisfy any of the four elements warrants denial of the [stay] motion."); *Dale v. Butler*, No. 7:20-CV-184-BR, 2021 WL 1305391, at *2 (E.D.N.C. Apr. 2, 2021) ("The movant must make a clear showing on each factor; the court does not engage in balancing test."); *In re Carolina Park Assocs., LLC*, No. 2:10-CV-1805-DCN, 2010 WL 2756945, at *2 (D.S.C. July 12, 2010) ("Failure to satisfy any of the four factors is sufficient grounds to deny the requested stay."); *see also CWCapital Asset Mgmt., LLC*, 2013 WL 3288092, at *2 n.5 ("For purposes of deciding the instant motion, the court assumes the requirements for obtaining a preliminary injunction and the law that has developed around injunctive relief apply in the context of a motion for stay pending appeal. The parties have not provided, and the court has not found, a case holding otherwise.").

Here, the district court did "not determine precisely which test is appropriate" as it found Defendants had failed to satisfy any of the four *Long* factors. ECF 268 at 3.

As preliminary injunctions and stays pending appeal arise from the same "fourfold equitable rule of thumb," *Blackwelder*, 550 F.2d at 193, this Circuit should make clear that *The Real Truth* standard applies to motions to stay and require

6

Defendants to satisfy all four *Long* factors.  Regardless, under *The Real Truth* standard or a "sliding-scale" approach, Defendants' motion for a stay should be denied as it was by the district court.

## II.   DEFENDANTS HAVE FAILED TO DEMONSTRATE A STRONG SHOWING THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS.

### A.    The Injunction Is Not Improperly Vague.

Defendants assert that this Court's injunction is not compliant with Rule 65(d) because it is "impermissibly vague."  Br. at 6-10.  The Rule requires an injunction order to "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1); *see* 11A Charles Alen Wright & Arthur R. Miller, Federal Practice and Procedure Civ. § 2955 (3d ed. 1998) ("The drafting standard established by Rule 65(d) is that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed.").

Defendants first argue that the district court failed to "specifically" identify the coverage exclusion at issue.  Br. at 8.  Defendants are mistaken.  No reasonable question can exist as to the exclusion enjoined from enforcement, which the district court's memorandum opinion and order identifies specifically and discusses exhaustively.  *See* ECF 268 at 4-5 ("Defendants need not look anywhere but the Court's opinion to recognize the exclusion at issue in the injunction.").  Defendants'

brief itself indicates they understand the exclusion at issue and how to stop enforcing it, as they are currently doing. Br. at 3 (explaining that the health Plan's board of trustees has approved compliance with the injunction and "the challenged coverage exclusion is currently not in effect").

Defendants next argue the injunction is vague because it fails to provide "any definition of [the] dispositive term" "medically necessary" services. Br. at 8. Defendants are again mistaken. The district court provided such a definition by incorporating North Carolina's statutory definition of "medically necessary" services:

> (1) "[p]rovided for the diagnosis, treatment, cure, or relief of a health condition, illness, injury, or disease" and "not for experimental, investigational, or cosmetic purposes," (2) "[n]ecessary for and appropriate to the diagnosis, treatment, cure, or relief of a health condition, illness, injury, disease, or its symptoms," (3) [w]ithin generally accepted standard of medical care in the community," and (4) "[n]ot solely for the convenience of the insured, the insured's family, or the provider."

JA3667 (quoting N.C. Gen. Stat. § 58-3-200(b)). Defendants also claim the district court's use of the phrase "medically necessary services for the treatment of gender dysphoria" impermissibly refers to another document. Br. 8. Once again, Defendants are mistaken. The district court did not refer to another document, instead it incorporated the definition of "medically necessary services" from the relevant statute. JA3667 (quoting N.C. Gen. Stat. § 58-3-200(b)). Further, Defendants' purported confusion about whether they are permitted to prescribe

8

generic medications instead of brand name medications is not credible.  Br. at 8-9.

If the Plan only covers a generic form of medication for other participants, that is all

Plaintiffs would seek here.  They ask for equal treatment, nothing more and nothing

less.

Nor does Defendants' reliance on *Pashby v. Delia*, 709 F.3d 307 (4th Cir.

2013), support their cause.  Br. at 8-9.  The *Pashby* plaintiffs challenged stricter

eligibility requirements for an in-home personal care services program found in a

newly passed piece of legislation referred to as Policy 3E.  *Pashby*, 709 F.3d at 313.

The district court granted a preliminary injunction prohibiting the implementation

of Policy 3E.  *Id*.  However, Policy 3E included a range of provisions unrelated to

the eligibility requirements.  *Id*. at 331.  This Court found the injunction lacked

"reasonable detail" because while the district court only focused on the eligibility

requirements of Policy 3E, the actual injunction prohibited the complete

implementation of Policy 3E, which, as this Court questioned, might include

provisions unrelated to the eligibility requirements.  *Id*.  As a result, while this Court

found plaintiffs "established the need for a preliminary injunction," it remanded the

case back to the district court to further clarify its injunction order.  *Id*. at 332.

The exclusion, unlike Policy 3E, does not contain multiple provisions

unrelated to the specific requirement sought to be enjoined.  Instead, the exclusion

is a categorical prohibition of any and all coverage for gender dysphoria.  Period.

9

As a result, unlike in *Pashby*, here, the enjoined conduct is identified in reasonable detail, i.e., end the categorical prohibition of medically necessary services for the treatment of gender dysphoria, an act accomplished in 2017.

When it lifted the exclusion in 2017, the North Carolina State Health Plan for Teachers and State Employees ("NCSHP") was able to determine and provide "medically necessary services for the treatment of gender dysphoria." JA4685 (Board removed the exclusion "resulting in the provision of medically necessary services for the treatment of gender dysphoria"). Defendants plainly do not need more information from this Court to do so again. *See Williams v. United States*, 402 F.2d 47, 48 (10th Cir. 1967) ("[I]t is difficult to term appellant's argument that the injunction is inoperative from lack of specificity as more than self-denying." (footnote omitted)); ECF 268 at 5 ("If [the Plan's claims administrator] Blue Cross could make such coverage determinations in 2017, the Court finds that its injunction restoring the status quo and allowing Blue Cross to make such coverage decisions once again is sufficiently clear.").

Defendants contend that the district court reimposing the 2017 rule where NCSHP removed the exclusion and provided "medically necessary services for treatment of gender dysphoria" gives no guidance "short of a contempt hearing" on

what is covered by the injunction.[4]  Br. at 9-10.  The injunction does not need to identify a complete list of all relevant treatments for gender dysphoria.  The injunction enjoined the categorical prohibition of any and all coverage for gender dysphoria.  *See, e.g*., *Kadel v. N.C. State Health Plan for Tchrs. & State Emps*., 12 F.4th 422, 428 (4th Cir. 2021) ("The 2017 Plans did not mandate coverage for all gender-confirming care.  They simply allowed claims for gender-confirming care to be reviewed under the same criteria and in the same manner as claims for any other medical, mental health, or pharmacy benefits.").  Removing the categorical prohibition allows NCSHP (and the Defendants) in conjunction with its third-party administrators to "evaluate[] whether the billed medical procedure corresponds to a covered diagnosis."  JA586; JA3619 ("NCSHP's third-party administrators, Blue Cross and CVS, appear able to distinguish between medically necessary and unnecessary treatments.").  NCSHP does it on a daily basis for its 740,000 members, and did so for its transgender members in 2017.  *See, e.g*., JA4685 (Board minutes reflecting that for 2017 the Plan "would adopt" Blue Cross Blue Shield North Carolina's "medical policy" for treatment of gender dysphoria).  Defendants are doing so again now.  Br. at 3.  Defendants do not need more information than what

---

[4] Defendants attempt to sow additional doubt by claiming that Plaintiffs seek medically necessary services beyond those covered in 2017.  Br. 9-10.  This argument is a red herring as Plaintiffs have made clear that their claims seek access to the same kinds of care covered for others without sex discrimination.

11

is already included in the injunction to continue complying with it. *See Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1316 (10th Cir. 1998) ("Rule 65(d) requires only that the enjoined conduct be described in reasonable, not excessive, detail . . . ."); *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) ("The specificity requirement is not unwieldy . . . . An injunction must simply be framed so that those enjoined will know what conduct the court has prohibited.").

Finally, Defendants raise concerns about two other facially neutral exclusions that purportedly "affect coverage and payments for the treatment of gender dysphoria." Br. at 10-11. But those exclusions have no relevance to the district court's injunction or even to this case. ECF 268 at 6 ("Such exclusions are simply not at issue; thus, the Court appropriately omitted them from its discussion of the terms and scope of the injunction."). NCSHP never invoked them in the denials of care issued to Plaintiffs. JA3935; JA4673. These exclusions remained untouched in 2017, but NCSHP was able to provide "medically necessary services for the treatment of gender dysphoria" without any trouble. JA3935; JA4673. The only exclusion removed to facilitate coverage of gender-affirming care in 2017 was the exclusion for "sex change or modifications." JA4684-4685; JA4673; JA513-519. Moreover, Blue Cross "has never implemented the portion of the Plan's benefit booklets that excludes 'surgery for psychological or emotion[al] reasons.'" JA1019. Further, the lack of FDA approval did not prevent NCSHP from covering care during

plan year 2017, and Defendant Dee Jones, as NCSHP's Rule 30(b)(6) designee, admitted NCSHP has covered other non-approved applications of medications. *See* JA310; JA4600-4609; *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351 (2001) ("[O]ff-label use is generally accepted."). Despite Defendants' newly-discovered concern about other exclusions purportedly implicated by gender-affirming care, they have only applied one exclusion to deny it.

### B.    The Injunction Is Consistent with Binding Supreme Court Precedent.

Defendants largely repeat their summary judgment and appellate arguments that the exclusion cannot be understood as discriminating based on sex under *Geduldig v. Aiello*, 417 U.S. 484 (1974). Br. at 11-16. Defendants are still wrong and therefore lack sufficient grounds for a stay. *In re Wellington*, 631 B.R. 833, 839 (Bankr. M.D.N.C. 2021) ("[A] party does not meet its burden on this factor by simply restating previous arguments from earlier filings."); *New York Life Ins. Co. v. Singh*, No. 14-cv-5726 (NG) (SMG), 2017 WL 10187669, at *2 (E.D.N.Y. July 13, 2017) ("To make out a 'strong showing' of likely success, a party seeking a stay must do more than simply reiterate arguments with which the court has already disagreed.").

Defendants claim that *Geduldig* "does not permit" a finding that the exclusion facially discriminates, or application of heightened scrutiny.[5]  Br. at 11.  Not so. *Geduldig* held only that an exclusion of pregnancy from a disability benefits program with no showing of "pretext" is not *per se* "invidious discrimination against the members of one sex."  417 U.S. at 496 n.20; *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2245–46 (2022) (quoting *Geduldig*, 417 U.S. at 496 n.20).  Defendants misrepresent *Geduldig* by claiming it "specifically" concluded that exclusions that can "only be stated or effectuated [by] referencing sex" do not constitute sex discrimination.  Br. at 12.  That is incorrect.

*Geduldig* instead found that "[n]ormal pregnancy is an *objectively identifiable physical condition*," 417 U.S. at 496 n.20 (emphasis added), such that pregnancy "can be explained without reference to sex, gender, or transgender status."  JA3709. *Geduldig* says nothing about an exclusion like this one that explicitly categorizes based on sex.  JA3669 (the exclusion prohibits "treatment or studies leading to or in connection with *sex changes* or modifications and related care" (emphasis added)).[6]

---

[5] Defendants confuse two distinct concepts, claiming that the district court cannot apply "heightened scrutiny" because the exclusion is not "facially discriminatory" based on sex.  Br. at 11-12.  But heightened scrutiny applies to all sex-based classifications, regardless of whether they are facial or intentional.  The exclusion here is both for the reasons explained in Plaintiffs' summary judgment motion. JA301-304; JA1050.

[6] For this reason, *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979), also has no application here.  Br. at 16.  *Feeney* found that mere disparate impact from a gender-neutral veterans' hiring preference—for which both women

For that reason, multiple courts have found that exclusions of gender-affirming care from coverage facially discriminate based on sex. *See, e.g.*, *Toomey v. Arizona*, No. 19-cv-00035, 2019 WL 7172144, at *6 (D. Ariz. Dec. 23, 2019); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1027-30 (D. Alaska 2020) (holding that exclusion prohibiting treatment "related to changing sex or sexual characteristic" is "facially discriminatory"); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 950 (W.D. Wisc. 2018); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 997 (W.D. Wis. 2018) (holding that a similar exclusion "on its face treats transgender individuals differently on the basis of sex").

Defendants rely on *Lange v. Houston County, Georgia*, No. 5:19-cv-392, 2022 WL 1812306 (M.D. Ga. June 2, 2022), to support their argument, Br. at 13, but this outlier holding by an out-of-circuit district court—not bound by this Circuit's analysis of facial sex discrimination—fails to persuade. *See* ECF 268 at 7. Indeed, after the district court's summary judgment ruling, another district court in *this* circuit similarly found *Geduldig* inapplicable to an exclusion of gender-affirming care, finding instead that such an exclusion facially discriminates based on sex. *See Fain v. Crouch*, No. 3:20-cv-0740, 2022 WL 3051015, at *8 (S.D.W. Va. Aug. 2, 2022) (observing that *Geduldig* "reasoned that pregnancy was a physical

---

and men could qualify—is not sufficient on its own to establish intent. *Id.* at 275. That is different from Defendants' deliberate and facial elimination of gender-affirming care for transgender people.

15

condition divorced from gender," and in contrast, the exclusion of gender-affirming care in West Virginia's Medicaid program "precludes a specific treatment that is connected to a person's sex and gender identity" and not just an objectively identifiable physical condition).

The more relevant Supreme Court precedent is *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993), a decision that Defendants conveniently omit from their analysis. As *Bray* recognized, "[s]ome activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed." *Id.* at 270. In other words, a "tax on wearing yarmulkes is a tax on Jews." *Id.* So too, here. An exclusion of healthcare that only transgender people need is an exclusion of transgender people.[7]

Nor did the district court, as Defendants claim, create "an artificial and inconsequential distinction" between medical "conditions" and "treatments." Br. at 13. Rather the district court distinguished *Geduldig* because it involved a condition not facially linked to sex, while the exclusion here bars all treatments if and when they relate to a transgender person's sex. JA3709 (holding that the Plan "does not

---

[7] The Supreme Court has "declined to distinguish between status and conduct in this context." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 689 (2010); *Lawrence v. Texas*, 539 U.S. 558, 583 (2003) (O'Connor, J., concurring).

16

merely exclude one 'objectively identifiable'" condition; "rather, it excludes treatments that lead or are connected to *sex changes* or modifications") (emphasis altered).

Defendants strain to distinguish *Bostock*, claiming it does not inform Equal Protection analysis or alter *Geduldig*'s applicability. Br. at 15. But even if that were true (it is not), the district court is bound by *Grimm v. Gloucester County School Board*, which the district court correctly applied to find facial discrimination. 972 F.3d 586 (4th Cir.) *as amended* (Aug. 28, 2020). *Grimm* held that a policy limiting students to use of the restrooms corresponding to their "biological genders" discriminated on its face based on sex. JA3703 (analyzing *Grimm*, 972 F.3d at 608-10). The district court then noted that the exclusion prohibits care of "*sex* changes or modifications and related care." JA3703. Just as a policy referencing "biological genders" facially discriminates based on sex, so too does an exclusion for care based on "sex." Defendants identify nothing suggesting they are likely to succeed in reversing the district court's plain application of *Grimm*.

17

### C.     This Court Properly Found Plaintiffs Similarly Situated to the Cisgender Plan Participants Who Receive the Same Care Plaintiffs are Denied.

Defendants claim that the district court "ignored [Plaintiffs'] burden of proof" on summary judgment to prove that they are "similarly situated," Br. at 17, but their argument amounts to mere disagreement with the district court, not a showing of error.  In fact, the district court squarely considered the issue and found Plaintiffs similarly situated because transgender and cisgender participants "are all members of the Plan who seek similar or identical treatments."  JA3708.  Defendants misunderstand the district court's observation that any neutral reasons that a transgender participant might subsequently be denied coverage for a particular treatment are not relevant at this threshold stage, which simply examines whether Defendants can justify a categorical barrier to coverage.  JA3708.

Defendants' summary judgment briefing identified no material difference between transgender Plan participants and cisgender Plan participants, and their stay motion offers nothing new.  Defendants insist that instead of comparing the transgender people denied care with the cisgender people who are eligible, one must compare their diagnoses, but this is a transparent attempt to rewrite the exclusion.  "Plan coverage decisions are based on medical diagnoses, not patient identities," Defendants claim.  Br. at 17.  But that is not how the exclusion operates.  Rather, as the district court recognized, the "factor used by the Plan to distinguish between

18

covered and uncovered treatments" is that the latter "'change or modify' the patient's assigned sex." JA3708. The exclusion does not reference diagnosis, only the fact that the care is needed for gender transition. JA3669 (the exclusion prohibits "treatment or studies leading to or in connection with sex changes or modifications and related care").

Even accepting Defendants' argument at face value, however, discrimination on the basis of gender dysphoria *is* discrimination against transgender people, and Defendants' argument is nothing more than a "concise expression of an intention to discriminate." *Plyler v. Doe*, 457 U.S. 202, 227 (1982). As the unrebutted expert testimony showed and numerous courts have recognized, "inherent in a gender dysphoria diagnosis is a person's identity as transgender. In other words, a person cannot suffer from gender dysphoria without identifying as transgender." *Fain*, 2022 WL 3051015, at *6; *see also Brandt v. Rutledge*, 551 F. Supp. 3d 882, 889 (E.D. Ark. 2021) (gender-affirming care "is only sought by transgender individuals"), *aff'd sub nom.*, *Brandt by & through Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022); *Toomey*, 2019 WL 7172144, at *6 ("[T]ransgender individuals are the only people who would ever seek gender reassignment surgery."). The district court was thus correct to hold that pointing to gender dysphoria does not identify a relevant difference between transgender and cisgender participants, it simply makes clear that Defendants discriminate "based on sex and transgender status." JA3706;

*see also Fain*, 2022 WL 3051015, at *6 (an exclusion "aimed specifically at a gender change procedure . . . targets transgender people because they are transgender"); *Boyden*, 341 F. Supp. 3d at 1000.

Defendants' failure to identify a relevant difference between transgender and cisgender Plan participants concedes that there is none. Defendants fail to carry their heavy burden for a stay.

## III.   DEFENDANTS WILL NOT BE IRREPARABLY INJURED ABSENT A STAY.

Defendants claim irreparable injury because it "jeopardizes [Defendants'] ability to make discretionary policy decisions as stewards of the Plan's state-allocated resources." Br. at 20. Relatedly, Defendants also claim injury because the injunction is "distorting the Plan's policy determinations on how to allocate finite resources to their most efficient use." *Id*.

Defendants' own testimony does not support its financial injury claim. Defendant Dee Jones, who served as NCSHP's Rule 30(b)(6) representative, admitted that "the cost of this benefit is not going to break the Plan, never was, never will." JA3958. Defendant Dale Folwell, who was disclosed as a Rule 26(a)(2)(C) expert to testify about the Plan's "unfunded liability," and the general concerns of the Plan's financial feasibility, admitted that he was "not sure there's a direct correlation between the unfunded liability and the exclusion." JA3883-3884; JA3914. Moreover, the Plan has undertaken initiatives to address its unfunded

liability that—in contrast to the minimal cost of gender-affirming care—save in some cases hundreds of millions of dollars. JA3950-3952. As found by the district court, the estimated savings from maintaining the exclusion is approximately one dollar for each of the Plan's 740,000 members. JA3710. As the district court correctly noted, "[s]uch a paltry limit on health care costs is not an important governmental interest." JA3710; *see also* ECF 268 at 9. It certainly is not enough to hold up the enforcement of the injunction either.

Second, even if legitimate—and even if substantial—injuries "in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough" to establish irreparable injury when seeking a stay. *Virginia Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958); *Long*, 432 F.2d at 980 (same).

## IV.   PLAINTIFFS WILL BE SUBSTANTIALLY HARMED BY A STAY.

Defendants assert "[Plaintiffs] will be unharmed by a stay of the injunction pending appeal." Br. at 22. Defendants' position is baffling. How does denying coverage for medically necessary healthcare to transgender individuals not harm those individuals? JA3670 ("Gender dysphoria is characterized by clinically significant distress and anxiety resulting from the incongruence between an individual's gender identity and birth-assigned sex."); *Eknes-Tucker v. Marshall*, No. 2:22-cv-184-LCB, 2022 WL 1521889, at *12 (M.D. Ala. May 13, 2022) ("The

record shows that, without transitioning medications, Minor Plaintiffs will suffer severe medical harm, including anxiety, depression, eating disorders, substance abuse, self-harm, and suicidality."); *see also Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 265 (1974) (delayed medical care can cause a patient needless deterioration, requiring more expensive future care and possibly causing disability, which can strain state social services).

In disclaiming any harm, Defendants attempt to shift the focus to Plaintiffs' claim for monetary damages due to the NCSHP's past discriminatory behavior. But Defendants miss the point of injunctive relief. First, no amount of monetary damages can restore Plaintiffs to their rightful position of being able to access medical care at the time they need it, or undo the deprivation of equal treatment under law. *See Walker v. Azar*, 480 F. Supp. 3d 417, 428 (E.D.N.Y. 2020); *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017) (finding no adequate remedy "for preventable 'life-long diminished well-being and life-functioning'").

Second, Defendants claim that certain Plaintiffs "merely make conclusory assertions that they might seek further gender-affirming treatments in the future." Br. at 23. But despite Defendants' claims, the record is clear, as found by the district court, that Plaintiffs "will require continued medical care to treat their gender dysphoria and that, barring judicial or legislative intervention, NCSHP intends to

maintain the exclusion." JA3728 ("The exclusion has and will continue to force Plaintiffs and others delay or forgo medically necessary treatments…."); ECF 268 at 10.

## V.  THE PUBLIC INTEREST WILL NOT BE SERVED BY A STAY.

Defendants claim a stay will benefit the public through the "allocation of North Carolina taxpayer dollars by the proper authorities unless and until the validity of the injunction is confirmed on appeal." Br. at 23-24. A stay impacts the public interest when it has "consequences beyond the immediate parties." *In re Wellington*, 631 B.R. at 846 (quoting *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015)). Here, the injunction benefits the public by allowing *all* transgender individuals covered under NCSHP to receive "medically necessary services for the treatment of gender dysphoria" during the pendency of the appeal—a benefit that outweighs Defendants' concern over the allocation of taxpayer dollars. *Pashby,* 709 F.3d at 331 ("Although we understand that the North Carolina legislature must make difficult decisions in an imperfect fiscal climate, the public interest in this case lies with safeguarding public health rather than with assuaging North Carolina's budgetary woes."); ECF 268 at 11 ("it is clear to the Court that the public interest in this case lies with protecting public health by ensuring all individuals covered under NCSHP receive 'medically necessary services for the treatment of gender dysphoria'").

## VI.    CONCLUSION

Defendants seek the "extraordinary relief" of staying the district court's injunction, but have failed to carry their "heavy burden" of making a "clear showing" on all four factors required to secure a motion for stay.  As a result, this Court should deny Defendants' Motion.


Dated: October 31, 2022                                Respectfully submitted,

/s/ Amy E. Richardson                                  Tara L. Borelli
Amy E. Richardson                                      Carl S. Charles
Lauren E. Snyder                                       LAMBDA LEGAL DEFENSE AND
HWG LLP                                                EDUCATION FUND, INC.
1919 M Street, NW, 8th Floor                           1 West Court Square, Ste. 105
Washington, DC 20036                                   Decatur, GA 30030
333 Fayetteville Street, Suite 1500                    (404) 897-1880
Raleigh, NC 27601
(202) 730-1300                                         Omar Gonzalez-Pagan
                                                       LAMBDA LEGAL DEFENSE AND
Michael W. Weaver                                      EDUCATION FUND, INC.
MCDERMOTT WILL & EMERY                                 120 Wall Street, 19th Floor
444 W. Lake St., Suite 4000                            New York, NY 10005
Chicago, IL 60606                                      (212) 809-8585
(312) 984-5820
                                                       David P. Brown
                                                       Ezra Cukor
Dmitriy G. Tishyevich                                  TRANSGENDER LEGAL DEFENSE &
MCDERMOTT WILL & EMERY                                 EDUCATION FUND, INC.
One Vanderbilt Avenue                                  520 8th Avenue, Ste. 2204
New York, NY 10017-3852                                New York, NY 10018
(212) 547-5534                                         (646) 862-9396


Counsel for Plaintiffs-Appellees

24

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response is in compliance with Rule 27 because the body of this response, including headings and footnotes, does not exceed 5,200 words as indicated by Microsoft Word, the program used to prepare this document.

Dated: October 31, 2022

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HWG LLP
1919 M Street, NW, 8th Floor
Washington, DC 20036
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601
Telephone: 202-730-1329
Facsimile: 202-730-1301
arichardson@hwglaw.com

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered users.

Dated: October 31, 2022

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HWG LLP
1919 M Street, NW, 8th Floor
Washington, DC 20036
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601
Telephone: 202-730-1329
Facsimile: 202-730-1301
arichardson@hwglaw.com