No. 22-1721

# In the United States Court of Appeals for the Fourth Circuit

MAXWELL KADEL; JASON FLECK; CONNOR THONEN-FLECK; JULIA MCKEOWN; MICHAEL D. BUNTING, JR.; C.B., *by his next friends and parents*; SAM SILVANE; and DANA CARAWAY,

*Appellees,*

v.

DALE FOLWELL, *in his official capacity as State Treasurer of North Carolina*; and DEE JONES, *in her official capacity as Executive Administrator of the North Carolina State Health Plan for Teachers and State Employees*,

*Appellants.*

On Appeal from the United States District Court for the Middle District of North Carolina
Case No. 1:19-cv-272-LCB-LPA

**Reply in Support of Appellants' Motion for Stay of Injunction Pending Appeal**

John G. Knepper
LAW OFFICE OF JOHN G. KNEPPER, LLC
1720 Carey Ave. Suite 590
Cheyenne, WY 82001
Telephone: (307) 632-2842
Facsimile: (866) 499-6894
john@knepperllc.com

Kevin G. Williams
Mark A. Jones
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 722-6558
kwilliams@belldavispitt.com
mjones@belldavispitt.com

*Counsel for Appellants*

November 7, 2022

### REPLY IN SUPPORT OF APPELLANTS' MOTION
### FOR STAY OF INJUNCTION PENDING APPEAL

After Appellants sought a stay in this Court, the district court denied the pending request for a stay of the district court's injunction. *See Kadel v. Folwell*, No. 1:19-cv-272 (M.D.N.C. Oct. 19, 2022) (Doc. No. 268).[1] The district court's reasoning highlights the ambiguity of the current injunction and the need for prompt relief.

**I. The preliminary injunction analysis in *The Real Truth About Obama, Inc. v. FEC* does not affect the standard for assessing a stay pending appeal pursuant to *Long v. Robinson*.**

Appellees assert that the preliminary injunction standard used in *The Real Truth About Obama* should now also be the standard for a stay pending an appeal." ECF No. 63 at 5-6 (citing *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reissued in relevant part*, 607 F.3d 355 (4th Cir. 2010)). While some district courts have concluded that *The Real Truth* requires an equivalent modification for a stay pending direct appeal, *see* ECF No. 63 at 4–6, others have not, *see Ohio*

---

[1] Subsequent citations to district court documents that were filed after preparation of the Joint Appendix refer to the appropriate docket entry in *Kadel v. Folwell*, No. 1:19-cv-272.

*Valley Env't Coal., Inc. v. U.S. Army Corps of Eng'rs*, 890 F.Supp.2d 688, 692 (S.D. W. Va. 2012). The Fourth Circuit has not resolved the matter. "A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this [C]ourt or a superseding contrary decision of the Supreme Court." *United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005). Given the lack of direct guidance, *Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970), remains this Circuit's standard for a stay pending appeal.[2]

## II. Appellants have established an adequate likelihood of success on the merits.

### A. *The District Court's Injunction is Impermissible vague, in violation of Rule 65(d) of the Federal Rules of Civil Procedure.*

First, this Court should stay the injunction because Appellants are likely to succeed on their claims that the injunction does not comply with the strict requirements of Federal Rule of Civil Procedure 65(d). The command to "reinstate coverage for 'medically necessary services for the treatment of gender dysphoria'" is impermissibly vague because it fails to identify the surgeries, procedures, and prescriptions that Appellants

---

[2] As Appellees acknowledge, the district court declined to determine which standard applies. Doc. No. 268 at 3; *see* ECF No. 63 at 6.

- 2 -

must cover. JA3734. This vagueness is not inadvertent; it stems from the medical community's disagreement as to which (of the more than 100) surgeries, procedures, and prescriptions for which Appellees seek coverage are "medically necessary services for the treatment of gender dysphoria." *Id*. Under Rule 65(d), the injunction must resolve such disputes or it is impermissibly vague.

Moreover, the "order granting an injunction" must state these terms specifically, not by referring to other documents. Fed. R. Civ. P. 65(d). The district court concluded that it had complied with Rule 65(d) because its "Memorandum Opinion and Order discussed at length the relevant exclusion." 1:19-cv-272 (Doc. No. 268 at 4). Rule 65(d) is not so flexible. For example, other courts have rejected the decision by a district court to adopt a magistrate's order by reference. *See Seattle-First Nat. Bank v. Manges*, 900 F.2d 795, 800 (5th Cir. 1990). The injunction itself, and no other document, must provide clarity such that "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022). The district court's cross-reference to a 72-page memorandum opinion is insufficient.

Critically, the text of injunction leaves Appellants unable to determine precisely which of hundreds of possible gender-affirming treatments they must now cover under penalty of contempt. Appellants can make a good-faith effort to comply with the injunction, perhaps with the assistance of a third-party administrator. But reasonable minds within the medical community disagree about the precise scope of "medically necessary services for the treatment of gender dysphoria." Because the injunction fails to instruct Appellants on how to resolve these disputes, Appellants are unable to compile the list of required surgeries, procedures, and prescriptions with any degree of scientific or legal confidence.

Appellees attempt to resolve the injunction's ambiguity by asserting that the injunction instructs Appellants to restore coverage for any treatments that were covered in 2017 (before the disputed exclusion was reinstated). ECF No. 63 at 11-12. But the "medically necessary services for the treatment of gender dysphoria" for which Appellees request coverage in this case extend far beyond the services that the State Health Plan covered in 2017. ECF No. 60 at 14–15. The injunction

is silent as to which class of services must be covered pursuant to the district court's equal protection holding.

Appellees suggest, in the alternative, that the Appellants can comply with the injunction by following the policy of their current third-party administrator. ECF No. 63 at 11-12. But that is not what the text of the injunction says. Even assuming that this approach is correct, the extent of the injunction is unclear. For example, Appellants' current third-party administrator does not consider calf and buttocks implantation surgery to be medically necessary, but WPATH and Appellees' experts believe that they are. *See* 1:19-cv-272 (Doc. No. 181-1 at 194–195, ¶¶ 25–26).[3] Appellants are unable to determine whether it would violate the injunction to follow their current third-party administrator's policy and thereby deny coverage for the calf and buttock

---

[3] WPATH considers calf implants, buttocks implants, hip/thigh/buttock lipofilling, laser hair removal, electrolysis hair removal, hair transplants/grafts, thyroid cartilage augmentations (Adam's apple implants), and voice modification surgeries to be medically necessary for the treatment of gender dysphoria. The State Health Plan's current third-party administrator deems all of these to be experimental and medically unnecessary. *See* BLUECROSS BLUESHIELD OF NORTH CAROLINA, CORPORATE MEDICAL POLICY: GENDER AFFIRMATION SURGERY AND HORMONE THERAPY, *available at* https://perma.cc/M6YX-ACHX.

implantation surgeries that WPATH and Appellees' experts consider to be medically necessary for the treatment of gender dysphoria. Neither the text of the injunction nor Appellees' Response provides a satisfactory answer to this simple question.

Another example further demonstrates Appellants' likelihood of appellate success based on the injunction's noncompliance with Rule 65(d). The injunction offers no guidance as to the medical necessity of facial transformation surgeries (brow lifts, cheek implants, chin contouring and implants, facial bone osteoplasty, forehead reductions, and jaw reductions). The State Health Plan did not cover any of these procedures in 2017. The State Health Plan's current third-party administrator supports coverage for these procedures, but other industry-leading third-party administrators have deemed them medically unnecessary.[4] Would it violate the injunction for Appellants to change to a new third-party administrator that excludes coverage for

---

[4] *See* UNITEDHEALTHCARE, MEDICAL POLICY: GENDER DYSPHORIA TREATMENT, *available at* https://perma.cc/7LEW-52QP; Aetna, Gender Affirming Surgery, *available at* https://perma.cc/Z8VD-RRSB; CIGNA, MEDICAL COVERAGE POLICY: GENDER DYSPHORIA TREATMENT, *available at* https://perma.cc/Y5UB-TT48.

facial transformation surgeries? Again, neither Appellees' Response nor the text of the injunction is able to answer this simple question. In the face of a national disagreement about exactly which procedures are "medically necessary services for the treatment of gender dysphoria," the district court's injunction provides insufficient guidance to understand precisely what treatments Appellants must cover, in violation of Rule 65.

Appellants are also likely to succeed on the merits because the injunction ignores other facially neutral exclusions of cosmetic surgeries, surgeries for emotional reasons, experimental drugs, and non-FDA-approved drugs, which collectively operate to deny coverage for all of Appellees' desired treatments and prescriptions. JA122-123. Appellees' references to coverage denial letters and past third-party administrator policies miss the point. *See* ECF No. 63 at 12. Even if the disputed coverage exclusion is lifted, the State Health Plan benefits booklet excludes nearly every possible "medically necessary service[ ] for the treatment of gender dysphoria," on facially neutral grounds. Yet the text of the district court's order does not reference these exclusions, much less enjoin the Plan from applying them, and the injunction's failure to address them violates Rule 65(d).

- 7 -

Appellants repeatedly pointed out that four distinct coverage limitations affected the provision of "gender-affirming care." JA122-123. Indeed, as noted in their merits brief to this Court, Appellants explained that all of the treatments for which Appellees seek coverage fall within other, facially neutral exclusions. ECF No. 44 at 58-60. The district court appears to have concluded that this is acceptable. 1:19-cv-272 (Doc. No. 268 at 6).

Appellees, however, have a different perspective. First, they incorrectly state that the Plan has not relied upon these exclusions when denying coverage for care that Appellees seek. ECF No. 63 at 13. But the restriction on cosmetic procedures is precisely why many of the Appellees' desired procedures are not available. Moreover, it is unclear whether Appellees agree with the district court that they are not challenging these exclusions. If they truly are not, then there is no relief for them, and this litigation will have no effect. The district court's injunction provides no additional coverage beyond what has always been available.

### B. The District Court has misapplied both Geduldig & Bostock

Appellants have demonstrated a sufficient likelihood of success on the merits of their Equal Protection arguments. Appellees contend that

*Geduldig v. Aiello*, 417 U.S. 484 (1974), "says nothing about an exclusion like this one that explicitly categorizes based on sex," but they fail to differentiate *Geduldig's* reasoning from the context of alleged transgender discrimination. *See generally* ECF No. 63 at 14. Appellees attempt to limit *Geduldig* by doubling down on their claim that pregnancy can be defined without reference to a person's biological sex. *Id.* at 13–14. As noted before, the Supreme Court has already foreclosed this theory by explicitly defining pregnancy with reference to sex. 417 U.S. at 496 n.20. Nor do Appellees make a meaningful attempt to respond to *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2245–46 (2022). The Supreme Court in *Dobbs* re-affirmed and quoted *Geduldig* precisely because abortion, like pregnancy, is inextricably connected to a person's biological sex. "The regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny unless the regulation is a 'mere pretext designed to effect an invidious

discrimination against members of one sex or the other.'" *Dobbs*, 142 S. Ct. 2228, 2245–46 (quoting *Geduldig*, 417 U.S. at 496 n.20).[5]

Appellants have also demonstrated a sufficient likelihood of success on their claim that the injunction improperly applied *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). Appellants need not "strain to distinguish *Bostock*"; the analysis is straightforward. *Bostock* was limited to a statutory analysis of Title VII. Critically, the Supreme Court has "never held that the constitutional standard for adjudicating claims of invidious racial [or gender] discrimination is identical to the standards applicable under Title VII." *Washington v. Davis*, 426 U.S. 229, 239 (1976). The *Bostock* Court's interpretation of a 1964 statute is not applicable to the original public meaning of the Fourteenth Amendment's Equal Protection of the Laws clause. Thus, *Bostock* does not affect *Geduldig's* controlling force.

---

[5] Appellants appreciate that heightened scrutiny applies upon a finding of either a facial classification or intentional discrimination. But the district court did not find intentional discrimination. And because (1) "facially discriminatory classifications must "explicitly classif[y] people based on sex," *Adkins v. Rumsfeld*, 464 F.3d 456, 468 (4th Cir. 2006), and (2) the Plan does not do so, the Supreme Court's equal protection caselaw simply does not permit the lower court's application of heightened scrutiny.

### C. The District Court's Erred in its Similarly Situated Analysis

Finally, Appellants have demonstrated a sufficient likelihood of success on their appellate argument that the district court improperly eliminated Appellees' obligation on summary judgment to establish individuals with whom they are "similarly situated." Appellees claim that "the <u>unrebutted expert testimony</u> showed" that "a person cannot suffer from gender dysphoria without identifying as transgender." ECF No. 63 at 19 (quoting *Fain*) (emphasis added). This is incorrect, because these factual assertions were fully rebutted through the discovery <u>in this case,</u> regardless of what happened during discovery in the *Fain* case. Here, multiple expert witnesses testified that both transgender and cisgender people suffer from gender dysphoria, and that many transgender people do not suffer from gender dysphoria at all. JA207; JA209-211, JA204-205 Appellees are not entitled to argue their case on the basis facts from different cases, and Appellants are likely to succeed with this claim on appeal.

### III. Appellees misunderstand the nature of the harm incurred by Appellants if the injunction is not stayed.

Appellees assert that the district court's injunction does not impose irreparable injury on Appellants because it will not "break the Plan," *i.e.* impact the Plan's overall solvency. ECF No. 63 at 20. But the Appellants have explicitly shown how they would be harmed by the injunction in a "structural" and "practical" manner, not through "financial injury." ECF No. 60 at 19-22. The effectiveness and accountability of the State Health Plan hinges on Appellants' ability to make complex actuarial and policy decisions as stewards of public funds. The district court's injunction—especially given its uncertain scope, as discussed above—irreparably distorts that decision-making process. The harm is not just that the State Health Plan now has <u>less</u> money to spend; the harm is that the State Health Plan no longer <u>knows</u> how much money it may spend, given its categorical obligation to provide coverage for an ever-expanding catalog of gender-affirming care. This is not a harm that can remedied with damages or restitution, so the specific dollar amount involved is irrelevant.

Likewise, Appellees' reference to the State Health Plan's "unfunded liability" only serves to highlight the injunction's interference with Appellants' fiduciary responsibilities. ECF No. 63 at 20. No single category of medical treatments can single-handedly create, or eliminate, the State Health Plan's "unfunded liability." Accordingly, North Carolina taxpayers have tasked the State Health Plan and its administrators with efficiently allocating limited resources among countless coverage options—each affordable individually, but impossibly costly in the aggregate. Appellees respond by suggesting that the public as a whole benefits from the injunction, and that this benefit to the public also "outweigh[ the Plan's] concern over the allocation of taxpayer dollars." ECF No. 63 at 23. This is incorrect. By limiting the State Health Plan's ability to make informed tradeoffs among these competing priorities, the injunction irreversibly undermines the state administrative process to the public detriment.

## CONCLUSION

This Court should stay the district court's injunction pending this appeal.

- 14 -

Respectfully submitted this the 7th day of November, 2022.

*/s/ John G. Knepper*
John G. Knepper
Wyo. Bar No. 7-4608
LAW OFFICE OF JOHN G. KNEPPER, LLC
1720 Carey Ave. Suite 590
Cheyenne, WY 82001
Telephone: (307) 632-2842
john@knepperllc.com

*/s/ Kevin G. Williams*
Kevin G. Williams
N.C. Bar No. 25760

*/s/ Mark A. Jones*
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com

## CERTIFICATE OF WORD COUNT

Pursuant to Fed. R. App. P. 27(d)(2)(C), the undersigned certifies that this Reply complies with the Court's word limit as calculated using the word count feature of the word processing software. Specifically, this Reply contains less than 2,600 words. This count includes the body of the brief and headings, but does not include the caption, signature lines, this certificate, or the certificate of service.

This the 7th day of November, 2022.

*/s/ John G. Knepper*
John G. Knepper
Wyo. Bar No. 7-4608
LAW OFFICE OF JOHN G. KNEPPER, LLC
1720 Carey Ave. Suite 590
Cheyenne, WY 82001
Telephone: (307) 632-2842
john@knepperllc.com

*/s/ Kevin G. Williams*
Kevin G. Williams
N.C. Bar No. 25760

*/s/ Mark A. Jones*
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notification to all counsel of record in this matter.

This the 7th day of November, 2022.

| | |
|---|---|
| */s/ John G. Knepper* <br> John G. Knepper <br> Wyo. Bar No. 7-4608 <br> LAW OFFICE OF JOHN G. KNEPPER, LLC <br> 1720 Carey Ave. Suite 590 <br> Cheyenne, WY 82001 <br> Telephone: (307) 632-2842 <br> john@knepperllc.com | */s/ Kevin G. Williams* <br> Kevin G. Williams <br> N.C. Bar No. 25760 <br><br> */s/ Mark A. Jones* <br> N.C. Bar No. 36215 <br> BELL, DAVIS & PITT, P.A. <br> 100 N. Cherry St. Suite 600 <br> Winston-Salem, NC 27101 <br> Telephone: (336) 722-3700 <br> Facsimile: (336) 722-8153 <br> kwilliams@belldavispitt.com <br> mjones@belldavispitt.com |